BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE COSTAR GROUP ANTITRUST LITIGATION | MDL No. ____ |

**MEMORANDUM IN SUPPORT OF MALM, INC.'S MOTION TO TRANSFER RELATED ACTIONS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and J.P.M.L. Rule 6.2, Movant Malm, Inc. respectfully moves the U.S. Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") for an Order transferring the actions listed in the Schedule of Related Actions ("Related Actions"), as well as any tag-along cases subsequently filed, to the U.S. District Court for the Central District of California for centralized pretrial proceedings before the Honorable Consuelo B. Marshall, who has presided over the most developed action in this litigation for nearly six years.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Related Actions

Three Related Actions are pending in two districts against CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar" or "Defendants"), arising from CoStar's monopolization of the U.S. markets for commercial real estate ("CRE") information and listing services:

1. *CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc.*, No. 2:20-cv-8819, ECF No. 160-2 (C.D. Cal. Aug. 5, 2022) (the "*CREXi* action" or "*CREXi* Countercl."). This first-filed action involves antitrust counterclaims brought by an allegedly excluded competitor, CREXi, which have survived a motion to dismiss. It is pending before the Honorable Consuelo B. Marshall.

2. *Malm, Inc. v. CoStar Group, Inc., et al.*, No. 2:26-cv-04052, ECF No. 1 (C.D. Cal. Apr. 15, 2026) (the "*Malm* action" or "*Malm* Compl."). This is a proposed antitrust class action on behalf of CoStar's CRE broker customers. It is currently assigned to the Honorable John

F. Walter, with a notice of related case to the *CREXi* action pending before the Court. *See Malm*, ECF No. 4.

3. *Shapiro Hospitalities LLC d/b/a Grand & Co. v. CoStar Group, Inc., et al.*, No. 1:26-cv-1027, ECF No. 1 (E.D. Va. Apr. 14, 2026) (the "*Shapiro* action" or "*Shapiro* Compl."). This is another proposed antitrust class action on behalf of CoStar's CRE broker customers before the Honorable Patricia Tolliver Giles.

**B. The Common Antitrust Claims**

CoStar dominates the markets for CRE listing and information services, operating the largest platform for CRE listings and the largest database for CRE information in the United States. CRE brokers nationwide depend on these services to list, search for, and research commercial properties for their clients.

CREXi (the counterclaim-plaintiff in the first-filed competitor suit against CoStar) and plaintiffs in each of the proposed follow-on class actions allege that CoStar has willfully acquired and maintained monopoly power over these markets through a multi-faceted exclusionary scheme that includes: (1) exclusive contracts that prohibit CRE brokers from sharing their own listings, data, and photographs with CoStar's competitors; (2) watermarking and fingerprinting broker-supplied listing information and photos to deter clients from working with rivals and detect when its clients have done so; and (3) technological barriers that prevent brokers and competitors from accessing publicly available listing data. The *Malm* and *Shapiro* actions seek monetary, declaratory, and injunctive relief on behalf of similar proposed nationwide classes of CoStar customers. The *Malm* action additionally asserts claims under the California Cartwright Act and the California Unfair Competition Law on behalf of a California subclass.

The *CREXi* action has been pending before Judge Marshall in the Central District of California since 2020. Judge Marshall has presided over substantial pretrial proceedings, including motion to dismiss practice that culminated in a 2025 published decision from the Ninth Circuit, reversing the dismissal of CREXi's antitrust counterclaims and sustaining its allegations that

CoStar holds monopoly power and engaged in exclusionary conduct, *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, 150 F.4th 1056, 1068–75 (9th Cir. 2025)—a decision that will be directly applicable to any related class actions in the Ninth Circuit. Through years of pretrial proceedings and the Ninth Circuit appeal, Judge Marshall has become familiar with the relevant markets, CoStar's contractual practices, and the legal framework governing the antitrust claims at issue in all three Related Actions. *See, e.g.*, *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, 619 F. Supp. 3d 983 (C.D. Cal. 2022) (Marshall, J.); *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, 2023 WL 2468742, at *1 (C.D. Cal. Feb. 23, 2023) (Marshall, J.). By contrast, the *Shapiro* and *Malm* actions were filed within one day of each other in April 2026 and are in the earliest stages of pretrial proceedings.

## II. ARGUMENT

### A. Centralization Is Warranted Under 28 U.S.C. § 1407

Where, as here, multiple actions pending in different judicial districts concern common questions of fact and law, such actions should be centralized in one district for pretrial proceedings under 28 U.S.C. § 1407(a). The Related Actions involve the same defendants and the same anticompetitive conduct, and the class actions (the *Shapiro* and *Malm* actions) seek relief on behalf of substantially overlapping proposed nationwide classes. *See In re Harley Davidson Aftermarket Parts Mktg., Sales Practices & Antitrust Litig.*, 658 F. Supp. 3d 1381, 1382 (J.P.M.L. 2023) (consolidating cases that "raise common factual questions concerning defining the relevant market and determining whether the conduct caused supracompetitive pricing" in that market). This is precisely the kind of complex antitrust litigation that the Panel regularly centralizes.

1. The Related Actions involve common factual questions.

For purposes of Section 1407, common factual questions exist where multiple actions "arise from the same factual milieu" and can be expected to involve a significant number of common events, defendants, and/or witnesses. *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1346 (J.P.M.L. 2007). Here, the Related Actions do not merely share common questions; they involve nearly identical antitrust claims arising from the same anticompetitive scheme, raising "virtually identical factual questions concerning the conduct of [the Defendants] in allegedly monopolizing the [relevant] market[s]." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362 (J.P.M.L. 2014); *see In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1376 (J.P.M.L. 2023) ("The central factual allegations in support of the alleged [anticompetitive] scheme are the same in all actions . . . .").

In the *CREXi* action, the Ninth Circuit laid out a roadmap of the core, overlapping factual questions that plaintiffs must answer in each of the Related Actions. These include whether CoStar possesses monopoly power in the relevant CRE information and listing services markets, as shown through direct evidence (*i.e.*, supracompetitive pricing) and indirect evidence (*i.e.*, possessing a dominant market share of a relevant antitrust market that is protected by barriers to entry and expansion); whether the standard Terms and Conditions that govern CoStar's relationship with its broker-clients are *de facto* exclusive; and whether CoStar erected deceptive technological barriers preventing brokers from sharing their own listings with competitors. *CoStar*, 150 F.4th at 1068–75. The *Malm* and *Shapiro* complaints are built on the same allegations that were before the Ninth Circuit in the *CREXi* action. *See CREXi* Am. Countercl. ¶¶ 50–69; *Malm* Compl. ¶¶ 55–68; *Shapiro* Compl. ¶¶ 142–166 (challenging *de facto* exclusive provisions in CoStar's standard Terms and Conditions); *CREXi* Am. Countercl. ¶¶ 70–111; *Malm* Compl. ¶¶ 69–82; *Shapiro* Compl. ¶¶ 9,

162–166, 171 (challenging CoStar's watermarking and fingerprinting practices); *CREXi* Am. Countercl. ¶¶ 39–49; *Malm* Compl. ¶¶ 88–102; *Shapiro* Compl. ¶¶ 9, 172–73, 207 (challenging CoStar's technological blocking practices). Additional, equally complex, overlapping factual questions are also likely to arise in the course of litigation, such as the degree to which CoStar charges supracompetitive pricing (which is direct evidence of monopoly power in all the Related Actions, and central to the customer plaintiffs' damages cases), and whether there are procompetitive justifications for any elements of CoStar's anticompetitive scheme.

Accordingly, the Related Actions share numerous common questions of fact and satisfy the requirements for transfer under § 1407. Any minor differences between the actions in certain state law claims or additional factual allegations are irrelevant to the question of commonality.[1] *See In re Insulin Pricing Litig.*, 688 F. Supp. 3d at 1374–75 ("We often have held that the assertion of different legal claims or additional facts is not significant where, as here, the actions arise from a common factual core.").

[1] CoStar's recent argument that the *Malm* and *CREXi* actions are "not related," Defs.' Obj. to Pl.'s Not. of Related Cases, *Malm*, ECF No. 44, strains credulity. Indeed, counsel for CoStar conceded on a May 12, 2026 meet-and-confer teleconference that there is substantial overlap between the factual allegations in the two cases, and that CoStar's sole basis for asserting that the cases were dissimilar was the fact that the *CREXi* counterclaims are brought by an allegedly excluded competitor, while the class action claims are asserted on behalf of direct purchaser customers. Centralization of cases brought by competitors and direct purchasers is routine and unremarkable. *See, e.g.*, *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) ("[T]he Panel frequently centralizes litigations involving differently-situated plaintiffs and differently-defined putative classes, where, as here, all actions arise from a common factual core."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d at 1362 (centralizing "three types of actions— direct purchaser class actions, indirect purchaser class actions, and individual actions brought by competitors" where all actions "raise virtually identical factual questions concerning the conduct of [the defendant]").

2. Centralization would eliminate duplicative discovery and prevent inconsistent rulings.

Allowing the Related Actions to proceed separately will result in unnecessary duplication and wasted judicial and party resources. The parties will pursue substantially identical discovery from CoStar, *i.e.*, the same internal communications, the same contracts, the same pricing data and strategy documents, the same technology systems, the same enforcement policies, and substantial overlapping third-party discovery from foreclosed competitors and others impacted by CoStar's scheme. CoStar's witnesses and third-party witnesses will face duplicative depositions in two fora on the same conduct. Each side will retain duplicative experts on market definition, monopoly power, and damages methodology. And at least two different courts will face duplicative discovery motions; *Daubert* motions; and possibly even motions for class certification. Centralization will "eliminate the potential for duplicative discovery and pretrial motion practice, as well as inconsistent pretrial rulings and scheduling." *In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1355 (J.P.M.L. 2025). The Panel routinely centralizes complex antitrust cases for precisely these reasons. *See, e.g., In re Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1363 (J.P.M.L. 2024) ("Centralization is particularly merited here, as these overlapping cases are highly complex and likely will involve time-consuming fact and expert discovery."); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022) (centralization appropriate where actions asserted "substantially identical claims under the Sherman Act").

The risk of inconsistent rulings is most acute between districts in different circuits. The Ninth Circuit has already decided key legal questions that will recur in every action in this litigation. In sustaining CREXi's antitrust counterclaims, the Ninth Circuit held that CREXi plausibly alleged CoStar possesses monopoly power in the relevant markets and that CoStar's

contractual provisions operate as *de facto* exclusive dealing arrangements under the Sherman Act. *CoStar*, 150 F.4th at 1068–75. Those are the same legal questions presented by the *Malm* and *Shapiro* complaints. *See Malm* Compl. ¶¶ 152–61; *Shapiro* Compl. ¶¶ 188–99 (CoStar monopoly power); *Malm* Compl. ¶¶ 55–68; *Shapiro* Compl. ¶¶ 142–66 (*de facto* exclusive contracts). The *CREXi* action will continue to develop the antitrust record in the Central District of California under Ninth Circuit law that has already been applied to this dispute. Any customer class action in the Eastern District of Virginia would develop a parallel antitrust record under Fourth Circuit law, on the same operative facts, before a court with no prior exposure to the issues. The result would be exactly the kind of cross-circuit inconsistency on shared questions that Section 1407 exists to prevent. No amount of informal coordination between district judges in different circuits could resolve that. *See In re MultiPlan Health Ins. Provider Litig.*, 743 F. Supp. 3d 1376, 1377 (J.P.M.L. 2024) (centralization prevents "inconsistent pretrial rulings"); *Deere*, 607 F. Supp. 3d at 1351 (same).

The risk of inconsistent rulings is heightened here because the Related Actions involve overlapping, proposed nationwide class actions. Consolidation is therefore necessary to avoid the possibility of inconsistent class certification decisions. *See In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 737 F. Supp. 3d 1364, 1366 (J.P.M.L. 2024) ("Centralization will . . . prevent inconsistent pretrial rulings, particularly as to class certification . . . ."). Indeed, "[s]uch a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings." *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970).

3. The number of pending actions does not counsel against centralization given the complexity of this litigation.

The Panel has long recognized that the number of pending actions, standing alone, is not dispositive. Although Movant acknowledges that "[w]here only a minimal number of actions is involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate," *In re GEICO Customer Data Sec. Breach Litig.*, 568 F. Supp. 3d 1406, 1407 (J.P.M.L. 2021) (citation omitted), Movant meets that burden here. The Panel has centralized as few as two actions where the issues are complex, the discovery is extensive, and the risk of inconsistent rulings is real. *See, e.g., In re Respimat Pharms. Antitrust Litig.*, 796 F. Supp. 3d 1369, 1370 (J.P.M.L. 2025) ("Although there are only two related actions, the factual and legal issues will be complex and fact and expert discovery will be extensive, highly technical, and international in scope."); *In re Nebivolol ('040) Patent Litig.*, 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (centralizing two actions in complex patent litigation).[2] The Related Actions present exactly that

[2] *See also, e.g.*, *In re RBS Worldpay, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 2d 1322 (J.P.M.L. 2009); *In re LandAmerica 1031 Exch. Servs., Inc., Internal Revenue Serv. § 1031 Tax Deferred Exch. Litig.*, 626 F. Supp. 2d 1345 (J.P.M.L. 2009); *In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*, 431 F. Supp. 2d 1357 (J.P.M.L. 2006); *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346 (J.P.M.L. 2006); *In re Mosaid Techs. Inc., Pat. Litig.*, 283 F. Supp. 2d 1359 (J.P.M.L. 2003); *In re Cisco Sys., Inc., Secs. & Derivative Litig.*, 268 F. Supp. 2d 1378 (J.P.M.L. 2003); *In re Philadelphia Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937 (J.P.M.L. 2001); *In re White Consol. Indus., Inc., Env't Ins. Coverage Litig.*, No. 996, 1994 WL 52568 (J.P.M.L. Feb. 16, 1994); *In re Diamond Match Plant Hazardous Waste Cleanup Litig.*, 799 F. Supp. 1204 (J.P.M.L. 1992); *In re Pantopaque Prods. Liab. Litig.*, 787 F. Supp. 229 (J.P.M.L. 1992); *In re Fairchild Indus., Inc.*, No. 822, 1989 WL 162387 (J.P.M.L. Dec. 5, 1989); *In re Gen. Aircraft Corp. Antitrust/Tort Claims Act Litig.*, 449 F. Supp. 604 (J.P.M.L. 1978); *In re Petroleum Prods. Antitrust Litig.*, 393 F. Supp. 1091 (J.P.M.L. 1975); *In re L. E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054 (J.P.M.L. 1975); *In re E. Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763 (J.P.M.L. 1975); *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565 (J.P.M.L. 1975); *In re W. Coast Bakery Flour Antitrust Litig.*, 368 F. Supp. 808 (J.P.M.L. 1974); *In re Clark Oil & Ref. Corp. Antitrust Litig.*, 364 F. Supp. 458 (J.P.M.L. 1973); *In re Camco Pat. Infringement Litig.*, 343 F. Supp. 1406 (J.P.M.L. 1972); *In re Cross-Fla. Barge Canal Litig.*, 329 F. Supp. 543 (J.P.M.L. 1971); *In re CBS Licensing Antitrust Litig.*, 328 F. Supp. 511 (J.P.M.L. 1971).

profile: complicated questions of market definition, monopoly power, exclusionary conduct, and antitrust injury, to be addressed on a substantial documentary record spanning years of CoStar's contractual practices, technological systems, pricing policies, and internal communications, supported by extensive expert analysis. As courts have recognized, "the number of cases pending in an MDL is only one measure of the burden that those cases place on the courts," and "the efficiency costs of de-centralization could be far out of proportion to the mere number of actions in the MDL," particularly where the litigation involves multiple Rule 23 class actions, parties with different interests and claims to relief that nonetheless concern common factual issues, and substantial complexity. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 734 F. Supp. 3d 934, 950, n.8 (N.D. Cal. 2024).

The Panel's decisions denying centralization in small-case-count litigation reinforce, rather than undermine, the case for centralization here. Those decisions rested on circumstances that are absent from this litigation: the cases were not particularly complex, the parties shared common counsel, the actions were pending in adjacent districts, or pending § 1404 motions might eliminate the multidistrict character of the litigation altogether. *See In re Coll. Athlete Comp. Antitrust Litig.*, 730 F. Supp. 3d 1378, 1380 (J.P.M.L. 2024) (denying centralization of two actions where "informal coordination and cooperation among the involved parties and courts appeared quite feasible given the small number of involved actions, parties, and counsel," and where a pending § 1404 motion "could eliminate the multidistrict character of litigation"); *In re Hangtime, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 52 F. Supp. 3d 1375, 1376 (J.P.M.L. 2014) ("[t]hese cases are not particularly complex"); *In re Nutella Mktg. & Sales Pracs. Litig.*, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (denying centralization where claims "do not appear complicated").

Here, by contrast, none of those circumstances exists. The Related Actions are being prosecuted by three separate counsel teams on opposite coasts and present antitrust issues of a complexity the Panel routinely centralizes. Two Rule 23 class actions and a competitor counterclaim involving overlapping market definition disputes, expert testimony on monopoly power and damages, and the application of a published Ninth Circuit decision are not amenable to informal coordination. Expert discovery on the same markets and the same alleged monopoly power cannot be efficiently coordinated across two coasts when one court will apply binding Ninth Circuit precedent and another Fourth Circuit law. And rulings on the precise legal questions the Ninth Circuit has already decided in *CREXi* (namely, whether CoStar has been plausibly alleged to possess market power and to have willfully obtained that market power through exclusive dealing and other anticompetitive conduct in violation of the Sherman Act) may diverge when applied to the same factual record by judges in different circuits.

4. <u>Centralization under § 1407 is the only viable option.</u>

Transfer under 28 U.S.C. § 1404 will not eliminate the multidistrict character of this litigation. CoStar has begun the process of seeking to transfer the *Malm* action to the Eastern District of Virginia, a step that, if successful, would consolidate the customer class actions in Virginia but would leave the *CREXi* action in the Central District of California.[3] The *CREXi* action itself cannot practicably be moved: it consists of antitrust counterclaims asserted defensively in litigation CoStar itself initiated in the Central District of California, and CoStar has shown no intention of moving its own affirmative action. However CoStar's forthcoming § 1404 motion is

[3] The reverse path (*i.e.*, moving the *Shapiro* action to the Central District of California) is not a realistic alternative. Movant could seek to intervene in the *Shapiro* action and move for transfer under § 1404, but both the *Shapiro* plaintiff and CoStar have informed Movant that they would oppose any such effort.

resolved, the result is multidistrict litigation that only Section 1407 can centralize, especially because additional plaintiffs may still file elsewhere.

Likewise, voluntary dismissal will not centralize the actions in any venue. The *Shapiro* plaintiff has confirmed that it opposes centralization or consolidation in the Central District of California. Meanwhile, CREXi has no incentive to refile its claims elsewhere given the favorable Ninth Circuit opinion (and the fact that it will have to defend itself against CoStar's suit in the Central District of California regardless of where its antitrust claims are filed).

The Panel has long recognized that where one action in a related litigation cannot practicably be moved, transferring the remaining actions to that action's district is the appropriate path to coordination. *See In re Toilet Seat Antitrust Litig.*, 387 F. Supp. 1342, 1344 (J.P.M.L. 1975) (because government antitrust actions were not "subject to transfer under Section 1407, such coordination in this litigation can best be achieved by transferring all actions" to the district where those actions were pending); *In re Polychloroprene Rubber (CR) Antitrust Litig.*, 360 F. Supp. 2d 1348, 1351 (J.P.M.L. 2005) (transferring to district where related antitrust MDL was pending so that a single judge would have "flexibility to structure proceedings in both" dockets). That principle controls here. Voluntary cooperation among district judges in different circuits can address coordination needs at the margins, but it cannot produce a single judge presiding over all three Related Actions, and it cannot prevent inconsistent rulings on the very questions the Ninth Circuit has already decided in *CREXi*.

### B. The Panel Should Transfer the Related Actions to the Central District of California Before Judge Marshall

In determining the appropriate transferee district, the Panel considers a variety of factors, including whether the district "offers a forum that is both convenient and accessible for the parties and witnesses" as well as the experience of the transferee judge and district in navigating "the

nuances of complex and multidistrict litigation." *See In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). These factors support transfer to the Central District of California.

1. <u>Judge Marshall is familiar with CoStar's alleged anticompetitive conduct.</u>

The *CREXi* action has been pending before Judge Marshall since 2020. That action produced Judge Marshall's motion to dismiss opinions as well as the Ninth Circuit's published decision sustaining CREXi's antitrust counterclaims, a decision that addressed core legal questions about CoStar's monopoly power, the *de facto* exclusive nature of CoStar's standard contracts, and the anticompetitive character of CoStar's watermarking, fingerprinting, and technological blocking practices. *CoStar*, 150 F.4th at 1071, 1074. Judge Marshall has thus become familiar with the contractual provisions, technical systems, market structure, and exclusionary scheme that will drive the *Malm* and *Shapiro* actions. No other federal judge has had exposure to these issues for any meaningful period; assigning the MDL to any other court would require that court to develop the same expertise from scratch.

The Panel has identified procedural advancement as the "primary reason" for selecting a transferee court in many cases. *In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971); *see also In re Litig. Arising from Termination of Ret. Plan for Emp. of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 291 (J.P.M.L. 1976) (selecting forum that is more procedurally advanced despite argument that alternative forum was closer to documents and witnesses). The Panel has applied that principle repeatedly to select transferee districts based on a judge's existing familiarity with related litigation. Most recently, in *In re Broiler Chicken Grower Antitrust Litig. (No. III)*, the Panel centralized antitrust actions in the District of Utah because the transferee judge had "unparalleled familiarity with the claims and issues in this litigation," having "presided over the related actions comprising MDL No. 2977 for nearly eight years." 813 F. Supp.

3d 1363, 1365 (J.P.M.L. 2025). And in *In re Smith & Nephew BHR & R3 Hip Implant Products Liab. Litig.*, the Panel selected the District of Maryland because the transferee judge was "presiding over one of the most procedurally-advanced actions" and was "well situated to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion practice." 249 F. Supp. 3d 1348, 1352 (J.P.M.L. 2017); *see also In re Convergent Tel. Consumer Prot. Act Litig.*, 981 F. Supp. 2d 1385, 1387 (J.P.M.L. 2013) (transferring to judge presiding over "most procedurally advanced" action); *In re Pork Direct & Indirect Purchaser Antitrust Litig.*, 544 F. Supp. 3d 1379, 1380–81 (J.P.M.L. 2021) (transferring to judge presiding over action for three years, who decided two rounds of dismissal motions). The same considerations apply with full force here. Judge Marshall has been presiding over the *CREXi* antitrust litigation for years, while the *Malm* and *Shapiro* actions were filed within one day of each other in April 2026 and remain at the earliest stages of pretrial proceedings. Like Judge Shelby in *Broiler Chicken Grower (No. III)*, Judge Marshall is the only federal trial judge in the country who is familiar with the antitrust scheme and the directly applicable appellate decision that drive this litigation.

Judge Marshall's experience also fits squarely within the Panel's recognition that a judge's experience presiding over separate but related litigation against the same defendant is a substantial reason to centralize before that judge. The Panel has repeatedly centralized litigation before judges in materially similar positions. *See In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 677 F. Supp. 3d 1366, 1367 (J.P.M.L. 2023) (transferring class actions to district where judge presided over a separate data breach litigation against same defendant); *In re Bard Implanted Port Catheter Prods. Liab. Litig.*, 698 F. Supp. 3d 1381, 1383 (J.P.M.L. 2023) (centralizing to district in which judge presided over MDL involving a different medical device from the same manufacturer); *In*

*re Taxotere (Docetaxel) Eye Injury Prods. Liab. Litig.*, 584 F. Supp. 3d 1378, 1379 (J.P.M.L. 2022) (transferring to district in which judge presided over litigation involving same drug).[4]

The Panel could not find a posture better suited to centralization: the operative framework is set by published Ninth Circuit precedent, and discovery on the common conduct can now proceed before a single judge across all three Related Actions.

2. Two of the three Related Actions are pending in the Central District of California.

Two of the three Related Actions—the *Malm* action and the *CREXi* action—are already pending in the Central District of California. The Panel has expressed a strong preference for transferee districts in which one or more actions are already pending. *See, e.g.*, *In re MultiPlan*, 743 F. Supp. 3d at 1377-78 (selecting district where majority of actions were pending); *In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384-85 (J.P.M.L. 2004) (same). Notably, CoStar itself chose the Central District of California as the forum for the *CREXi* action when it filed the underlying complaint. *See* Compl., *CoStar Group, Inc. v. Commercial Real Estate Exchange Inc.*, No. 20-cv-08819, ECF No. 1 (C.D. Cal. Sept. 25, 2020).

3. The Central District of California is convenient, accessible, and well-equipped to handle an antitrust MDL.

The Central District of California is "well equipped with the resources that [a] complex antitrust docket . . . is likely to require." *In re Live Concert Antitrust Litig.*, 429 F. Supp. 2d 1363, 1364 (J.P.M.L. 2006). One of the largest federal courts in the nation, the District routinely handles complex antitrust and multidistrict litigation. *See, e.g.*, *id.*; *In re Nat'l Football League's "Sunday*

[4] CoStar may suggest that the *CREXi* action's six-year pendency makes it too procedurally advanced for centralization. Not so. The *CREXi* antitrust counterclaims spent their first five years on motion-to-dismiss practice and the Ninth Circuit appeal that culminated in the 2025 reversal; substantive fact discovery is just beginning. Judge Marshall is therefore not winding down a mature antitrust case, she is at the start of merits discovery on the same conduct that drives the *Malm* and *Shapiro* actions.

*Ticket" Antitrust Litig.*, 148 F. Supp. 3d 1358, 1360 (J.P.M.L. 2015); *In re TikTok, Inc., Minor Priv. Litig.*, 776 F. Supp. 3d 1349, 1351 (J.P.M.L. 2025); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 410 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019).

The District also has substantive ties to the litigation. Defendant CoStar maintains offices in Los Angeles and Irvine. Counterclaim-plaintiff CREXi is headquartered in Los Angeles, and its principal executives—likely important witnesses on the competitive harm and market foreclosure caused by CoStar's conduct—are based in the District. Counsel for CoStar, CREXi, and Movant all maintain offices in the District. And Los Angeles is a major transportation hub accessible by direct flights from all major cities, including the Washington, D.C. area where CoStar is headquartered.

Finally, a California federal court is uniquely well-positioned to adjudicate the California-law claims asserted in the *Malm* action on behalf of a California subclass, including claims under the California Cartwright Act and California Unfair Competition Law. The Central District of California routinely applies these statutes and is best equipped to manage state-law claims that arise from the same factual predicate as the federal antitrust claims.

4. <u>The Eastern District of Virginia is not a superior forum for consolidation.</u>

Only one of the three Related Actions is pending in the Eastern District of Virginia, and the *CREXi* action, the most procedurally advanced of the three, cannot practicably be moved there. The result of transferring the class action cases to Virginia would not be unified pretrial proceedings; it would be class actions in the Eastern District of Virginia operating in parallel with an active Central District of California antitrust case based on the same facts, before judges in different circuits applying different controlling precedent. That is the inefficient outcome Section 1407 is designed to prevent, not to produce.

A Virginia centralization would impose three substantive costs that California centralization avoids. First, the transferee judge would have no prior exposure to the complex antitrust claims that Judge Marshall has been managing since 2020 and would need to develop that expertise from scratch. Second, the Ninth Circuit's published decision in *CREXi*—which has addressed core questions about CoStar's monopoly power, the *de facto* exclusive character of its standard contracts, and the anticompetitive nature of its technological blocking—would continue to govern the *CREXi* action under Ninth Circuit law, while the customer cases in Virginia would proceed under whatever framework the Fourth Circuit develops on the same operative facts. Section 1407 exists to prevent precisely this kind of cross-circuit divergence on shared legal questions. Third, the *Malm* action's California subclass claims under the California Cartwright Act and Unfair Competition Law would be litigated before a judge with no particular familiarity with those statutes, claims that a California federal court is uniquely positioned to manage.

CoStar's headquarters is the only factor weighing in favor of Virginia. That is not enough. The Panel routinely selects transferee districts based on substantive ties to the litigation, the location of related litigation, and the experience of the transferee judge—not on the location of a defendant's corporate office. Here, every one of those factors favors the Central District of California.

## III. CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Motion be granted and the Panel transfer the Actions listed in the attached Schedule of Related Actions, as well as any future tag-along actions, to the Central District of California for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 before the Honorable Consuelo B. Marshall.

Date: May 12, 2026

Respectfully submitted,

*/s/ Zachary D. Caplan*

**BERGER MONTAGUE PC**
Zachary D. Caplan
Andrew C. Curley
Julia McGrath
Jeremy Gradwohl
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000
zcaplan@bergermontague.com
acurley@bergermontague.com
jmcgrath@bergermontague.com
jgradwohl@bergermontague.com

**SUSMAN GODFREY LLP**
Halley W. Josephs
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
hjosephs@susmangodfrey.com

William C. Carmody
Shawn J. Rabin
Henry J. Walter
One Manhattan West, 50th Fl.
New York, NY 10001
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
hwalter@susmangodfrey.com

**EDELSON PC**
Natasha J. Fernández-Silber
200 South 1st Street
Ann Arbor, MI 48104
nfernandezsilber@edelson.com

Sarah R. Lafreniere
Brandon Baum-Zepeda*
1255 Union Street NE, Suite 850
Washington, DC 20002
slafreniere@edelson.com
bbaum-zepeda@edelson.com

*Barred only in California. Practice limited to matters authorized by D.C. Rule 49(c)(3)

*Counsel for Plaintiff Malm, Inc.*