**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: COSTAR GROUP, INC.,**
**ET AL., ANTITRUST LITIGATION**                                          MDL No. 3192

**TRANSFER ORDER**

**Before the Panel**:[*] Plaintiff in the Central District of California *Malm* action, listed on Schedule A, moves under 28 U.S.C. § 1407 to centralize this litigation in the Central District of California or, alternatively, the District of District of Columbia.  This litigation consists of three actions pending in two districts, as listed on Schedules A and B.  Since the filing of the motion, the parties have notified the Panel of a related action filed in a third district.[1]

Plaintiff in the District of District of Columbia potential tag-along action supports centralization of only the class actions (all but the Central District of California *CREXi* action, listed on Schedule B) in the District of District of Columbia or, alternatively, the Eastern District of Virginia.  Plaintiff in the Eastern District of Virginia action and defendant/counter-defendant CoStar[2] oppose centralization and, alternatively, suggest centralization of only the class actions in the Eastern District of Virginia.  Defendant/counter-claimant Commercial Real Estate Exchange, Inc. (CREXi) opposes transfer of the *CREXi* action or any part of it outside the Central District of California and opposes any future consolidation of *CREXi* with the class actions in the transferee court.

The *CREXi* action was filed in 2020 by CoStar against its competitor, CREXi, alleging copyright infringement and other claims.  CREXi filed counterclaims alleging, *inter alia*, that CoStar has monopolized the markets for internet commercial real estate listing, information, and auction services in metropolitan areas across the U.S.  CREXi alleges that CoStar stifled competition through an aggressive acquisition strategy and anticompetitive tactics, including entering into exclusive agreements and implementing technological measures to prevent commercial real estate broker customers from working with CREXi and other CoStar competitors.  CREXi's antitrust claims were dismissed but, on appeal, the Ninth Circuit reversed the ruling in

---

[*]     Judge Karen K. Caldwell, Judge Madeline Cox Arleo, and Judge M. Casey Rodgers did not participate in the decision of this matter.

[1]     This and any other related actions are potential tag-along actions.  *See* Panel Rules 1.1(i), 7.1 and 7.2.

[2]     CoStar Group, Inc., and CoStar Realty Information, Inc.

- 2 -

2025. *See CoStar Group, Inc. v. Commercial Real Estate Exch., Inc.*, 141 F.4th 1075 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 150 F.4th 1056 (9th Cir. 2025), *cert. denied*, 2026 WL 795193 (U.S. Mar. 23, 2026).  Following this ruling, commercial real estate broker plaintiffs filed the two remaining actions on the motion and the potential tag-along action.  Each is brought on behalf of a putative nationwide class of CoStar customers alleging antitrust violations.

On the basis of the papers filed and the hearing session held, we find that the class actions involve common questions of fact and that centralization in the Eastern District of Virginia will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  The class actions share questions of fact arising from allegations that CoStar acquired and maintained monopoly power over the markets for commercial real estate information and listing services through a scheme that includes: (1) imposing *de facto* exclusivity provisions on commercial real estate brokers; (2) deterring brokers from participating in competing platforms by affixing proprietary watermarks to photographs and "fingerprinting" listings by deliberately embedding inaccurate data; and (3) deploying technological barriers that prevent brokers and competitors from accessing publicly available listing data.  All class plaintiffs allege the same or similar relevant markets, class periods, and theories of liability premised upon the same alleged anticompetitive scheme.  Although there are currently just three related actions pending, the alleged scheme is complex and centers on a key aspect of the commercial real estate industry.  Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.  While the Eastern District of Virginia action includes some unique allegations regarding long term agreements with the largest commercial real estate brokerage firms, "Section 1407 does not require a complete identity or even a majority of common factual and legal issues as a prerequisite to centralization." *In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003).

Common defendant CoStar opposes centralization but also asserts the actions would proceed most efficiently together and has moved under 28 U.S.C. § 1404 and the first-to-file rule to transfer all pending class actions to the Eastern District of Virginia, where it is headquartered. CoStar and the Eastern District of Virginia plaintiff argue that the Panel should allow the Section 1404 transfer process to play out.  We have denied centralization where there is a "reasonable prospect" that Section 1404 transfer will eliminate the multidistrict character of the litigation. *See In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012).  But "the pendency of Section 1404 motions, alone, is not dispositive, and we look to other circumstances to determine whether there is a reasonable prospect that the Section 1404 motions will resolve the difficulties posed by duplicative multidistrict litigation – for example, the amenability of counsel to Section 1404 transfer, orders addressing transfer in the underlying actions, and the likelihood of potential tag-along actions." *See In re Natrol, Inc., Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014).  Here, plaintiffs in the outlying actions are not amenable to Section 1404 transfer and, while CoStar primarily relies upon the forum selection clause in its Terms and Conditions, the parties dispute its applicability.  The outcome of the pending motions to transfer is far from certain.

- 3 -

No responding party supports including the *CREXi* action in an MDL. The *CREXi* counterclaims are individual antitrust and other claims brought by a competitor, while the remaining actions are putative nationwide class actions brought by CoStar customers. CREXi alleges it has suffered injury in the form of lost profits, while the class action plaintiffs allege that they have been injured by CoStar's supracompetitive prices. The relevant market alleged in *CREXi* is 50 individual metropolitan statistical areas, while the class action plaintiffs allege a nationwide market. Finally, the *CREXi* counterclaims contain unique allegations concerning CoStar's potential monopoly in a market not involved in the remaining actions—the market for commercial real estate auction services. The *CREXi* counterclaims, therefore, will involve different parties, different relevant markets, different injuries, additional facts, and will not involve class certification motion practice. Further, *CREXi* is in a different procedural posture from the class actions, and CREXi's antitrust counterclaims are connected to CoStar's direct claims pending in that case. *CREXi* has been pending for six years, the antitrust counterclaims have undergone discovery, including document productions and deposition testimony, and CoStar's counsel suggested at oral argument that the counterclaims could reach trial in two years. While there is some overlap between the *CREXi* antitrust counterclaims and the class claims, all parties agree that CoStar's claims against CREXi and CREXi's antitrust counterclaims should remain in the same court.

We find that the Eastern District of Virginia is the most appropriate transferee district for this litigation. CoStar is headquartered in this district, and most parties support centralization there, in the first instance or in the alternative. This litigation offers an opportunity to assign an MDL to an underutilized district that has the capacity to manage the litigation efficiently. We select Judge David J. Novak to preside over this litigation. Judge Novak is familiar with the contours of multidistrict and complex litigation, and we are confident he will steer this matter on an efficient and prudent course.

- 4 -

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Eastern District of Virginia are transferred to the Eastern District of Virginia and, with the consent of that court, assigned to the Honorable David J. Novak, for coordinated or consolidated pretrial proceedings.

IT IS FURTHER ORDERED that the motion for centralization as to the action listed on Schedule B is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____

Matthew F. Kennelly
Acting Chair

David C. Norton                    Dale A. Kimball
Richard Seeborg

**IN RE: COSTAR GROUP, INC.,**
**ET AL., ANTITRUST LITIGATION**                    MDL No. 3192

## SCHEDULE A

<u>Central District of California</u>

MALM, INC. v. COSTAR GROUP, INC., ET AL., C.A. No. 2:26−04052

<u>Eastern District of Virginia</u>

SHAPIRO HOSPITALITIES LLC v. COSTAR GROUP, INC., ET AL.,
    C.A. No. 1:26−01027

**IN RE: COSTAR GROUP, INC.,**
**ET AL., ANTITRUST LITIGATION**                              MDL No. 3192

**SCHEDULE B**

<u>Central District of California</u>

COSTAR GROUP, INC., ET AL. v. COMMERCIAL REAL ESTATE EXCHANGE
    INC., C.A. No. 2:20−08819